UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

MALCOLM MANSFIELD,

Plaintiff,

-against

THE CITY OF NEW YORK, NYPD POLICE OFFICER JOHN DOE, and NYPD POLICE OFFICER JANE DOE,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**Dkt. No.: 1:26-cv-03485**

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff, MALCOLM MANSFIELD ("Plaintiff"), by his attorneys, JON L. NORINSBERG, ESQ., PLLC, complaining of the defendants, upon information and belief, respectfully alleges as follows:

## PRELIMINARY STATEMENT

1. Two New York City police officers fired a taser into Malcolm Mansfield as he fled across a highway overpass, then watched him plunge approximately forty to fifty feet to the pavement below. They did so in flagrant violation of the NYPD's own rules. The fall left Mr. Mansfield with severe and permanent injuries, including a severely fractured ankle that required surgical repair with open reduction and internal fixation, involving the implantation of screws and plates. He has been left with a permanent disability.

2. Mr. Mansfield had committed no crime. Frightened by past harrowing encounters with police, he ran, and two officers chased him onto the Van Wyck Expressway overpass. NYPD rules expressly and absolutely prohibit firing a taser at a person at an elevated height, because the shock makes its target lose all muscular control and fall. The officers fired anyway.

3. By this action, brought pursuant to 42 U.S.C. §§ 1983 and 1988 and 2021 N.Y.C. Local Law No. 48, N.Y.C. Admin. Code §§ 8-801 et seq., Mr. Mansfield seeks redress for

defendants' willful, wanton, and flagrant disregard of proper police procedures, for the grievous and permanent injuries they inflicted upon him, and for the deprivation of his constitutional and statutory rights.

## JURISDICTION AND VENUE

4. This action arises under 42 U.S.C. §§ 1983 and 1988 and the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331, which provides for original jurisdiction over actions arising under the Constitution and laws of the United States, and by 28 U.S.C. § 1343(a)(3) and (4), which provide for jurisdiction over actions to redress the deprivation, under color of state law, of rights secured by the Constitution and laws of the United States.

5. Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a), to hear and decide his claims arising under the laws of the City of New York, which claims are so related to the federal claims that they form part of the same case or controversy.

6. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred within this District, namely in the County of Queens, State of New York.

## THE PARTIES

7. Plaintiff Malcolm Mansfield is a resident of the County of Queens, State of New York.

8. Defendant Police Officer John Doe (the male officer) and Defendant Police Officer Jane Doe (the female officer) (together, the "Doe Defendants") were at all times relevant herein officers, employees, and agents of the New York City Police Department, acting under color of

state law. The designations "John Doe" and "Jane Doe" are fictitious, used because Plaintiff does not yet know the Doe Defendants' true names and shield numbers.

9. The Doe Defendants are the two officers who pursued, tased, and arrested Plaintiff. Plaintiff will seek leave to amend this Complaint to set forth their true names and shield numbers once they are ascertained through discovery.

10. The Doe Defendants are sued in their individual capacities.

11. Upon information and belief, the Doe Defendants were at all times relevant herein assigned to the NYPD 103rd Precinct.

12. At all times relevant herein, the Doe Defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of the New York City Police Department, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. They were acting for and on behalf of the New York City Police Department at all times relevant herein, with the power and authority vested in them as officers, agents and employees of the New York City Police Department and incidental to the lawful pursuit of their duties as officers, employees and agents of the New York City Police Department.

13. Defendant City of New York is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible.

## STATEMENT OF FACTS

14. Plaintiff Malcolm Mansfield has dedicated his professional life to reducing violence in his community. At the time of the incident, and for approximately the preceding two years, Plaintiff was employed as an Outreach Worker Supervisor for the King of Kings

Foundation, Inc., a community-based organization dedicated to changing community and behavioral norms by teaching young people about the dangers of guns, drugs, gang violence, and the lack of education.

15. For approximately eighteen months before assuming that role, Plaintiff worked for the same organization as a Hospital Responder. In that capacity, his duties included comforting the families of victims of violence at the hospital, helping to maintain the safety of patients in and out of the hospital, and working to prevent further acts of retaliatory violence.

16. On December 30, 2025, at approximately 1:18 a.m., Plaintiff was outside his residential building when he became involved in a verbal altercation with a female acquaintance. The dispute was non-violent in nature, and Plaintiff had committed no crime.

17. Following the verbal dispute, the female acquaintance approached a nearby NYPD patrol car, knocked on it, and spoke with the two officers inside, the Doe Defendants.

18. After speaking with the female acquaintance, the officers activated the patrol car's emergency lights and drove the vehicle toward Plaintiff.

19. Based on prior harrowing encounters with the police, and gripped by the fear those encounters had instilled in him, Plaintiff fled on foot. At no time had Plaintiff committed any crime.

20. One of the Doe Defendants exited the passenger side of the patrol car and pursued Plaintiff on foot, while the other, who was driving, used the patrol car to pursue Plaintiff.

21. Plaintiff fled on foot in the direction of his sister's residence, located approximately 1.5 miles away.

22. At no time did Plaintiff possess any contraband, drugs, or weapons, and at no time had Plaintiff committed any crime giving the Doe Defendants lawful justification to use force against him.

23. During the pursuit, and while Plaintiff was on the Van Wyck Expressway overpass, the Doe Defendants deployed a taser against Plaintiff, causing him to fall from the overpass. Plaintiff believed gunshots were also being fired at the time, contributing to his fear and confusion.

24. At the time the taser was deployed against him, Plaintiff was not armed, was not threatening anyone, and posed no immediate threat of physical harm to the Doe Defendants or to any other person. Plaintiff was, at most, fleeing on foot.

25. Deploying a taser against Plaintiff while he was positioned on the elevated overpass created an obvious and substantial risk that the electrical shock would cause Plaintiff to lose muscular control and fall from the overpass to the highway below. That risk was readily foreseeable to any reasonable officer.

26. Under proper police procedure, police officers are expressly and mandatorily prohibited from deploying a taser against any person who is located at an elevated height. This prohibition is absolute and not discretionary, and exists precisely because the electrical shock predictably causes its target to lose all muscular control and fall.

27. The manufacturer of the taser device, Axon Enterprise, Inc. (formerly TASER International, Inc.), likewise expressly warns, in its product warnings and officer training materials, against deploying the weapon against a person in an elevated position. The manufacturer warns that the neuromuscular incapacitation caused by the weapon frequently causes the subject to fall, that such falls are uncontrolled, and that they can result in serious injury or death.

28. The deployment of a taser against Plaintiff while he was at an elevated height on the overpass was a flagrant violation of proper police procedure.

29. The taser was deployed by the Doe Defendants, two line officers acting on their own. No supervisor of the rank of sergeant or above was present at the scene, and no supervisor authorized or directed the deployment.

30. Upon information and belief, the policies, procedures, and training of the New York City Police Department governing conducted electrical weapons require the authorization, involvement, and/or supervision of a ranking supervisor in connection with the use of such weapons. The Doe Defendants deployed the taser against Plaintiff without any such supervisory authorization or oversight, in further disregard of proper police procedure.

31. According to hospital records, Plaintiff fell from the Van Wyck Expressway overpass a height of approximately forty to fifty (40-50) feet onto the highway below, landing on his feet and subsequently falling onto his back.

32. At no time did Plaintiff voluntarily jump from the overpass. The fall was directly and proximately caused by the Doe Defendants' unlawful and objectively unreasonable deployment of a taser against Plaintiff in a location that presented an obvious and substantial risk of death or serious physical injury.

33. At no time relevant herein did Plaintiff commit a crime or violate the law in any way, nor did the police officers have an objective basis to use a taser or any other force against Plaintiff.

34. At no point did the Doe Defendants recover any drugs, weapons, or other illegal contraband from Plaintiff or from a location in Plaintiff's possession, custody, or control.

35. No ambulance was called at the scene. Instead, an officer placed Plaintiff in handcuffs and transported him to Jamaica Hospital Medical Center for treatment.

36. At Jamaica Hospital Medical Center, Plaintiff was admitted on December 30, 2025, and diagnosed with a displaced trimalleolar fracture of the right ankle and a right foot Lisfranc fracture dislocation.

37. On December 30, 2025, Plaintiff underwent his first emergency surgery: closed reduction with manipulation of right closed ankle fracture dislocation and application of a Delta Frame External Fixator.

38. On January 6, 2026, Plaintiff underwent a second, more extensive surgery, including open reduction internal fixation of the right trimalleolar ankle fracture with posterior malleoli fixation, repair of the syndesmosis, removal of the external fixator, and open reduction internal fixation of the Lisfranc fracture involving two rays.

39. Plaintiff was hospitalized from December 30, 2025 through January 8, 2026, a period of nine (9) days, during the entirety of which he remained in police custody.

40. Throughout his hospitalization, including during and following his surgeries, Plaintiff was restrained in handcuffs and leg shackles. Hospital nursing records document continuous monitoring of forensic restraints applied to Plaintiff's wrists and ankles throughout his inpatient stay. Upon discharge, Plaintiff was discharged to police custody.

41. All of the police officers involved with this incident are responsible for the injuries suffered by Plaintiff. While some officers directly inflicted injuries on Plaintiff, others stood by and did nothing, watching their colleagues flagrantly violate Plaintiff's rights under the Constitution of the United States, New York State Law and New York City law.

42. The Doe Defendants who stood idly by and did nothing to prevent their fellow officers from unjustifiably tasing Plaintiff on an elevated overpass, arresting him, and using excessive force against him are equally responsible for the severe and permanent injuries suffered by Plaintiff.

43. While Plaintiff was in custody, the Doe Defendants provided prosecutors in the Queens County District Attorney's Office with information resulting in charges against Plaintiff.

44. As a result of Plaintiff's arrest, he was charged with five (5) offenses: Assault in the Third Degree (PL 120.00), Criminal Obstruction of Breathing (PL 121.11), Petit Larceny (PL 155.25), Criminal Possession of Stolen Property in the Fifth Degree (PL 165.40), and Harassment in the Second Degree (PL 240.26).

45. Plaintiff was arraigned in Queens Criminal Court on January 8, 2026, and charged with multiple crimes he did not commit.

46. On April 17, 2026, all five charges were dismissed and sealed in their entirety pursuant to CPL § 160.50.

47. As a result of Defendants' unlawful actions, Plaintiff has sustained severe and permanent injuries including but not limited to a displaced right trimalleolar ankle fracture with syndesmotic disruption and a right foot Lisfranc fracture dislocation, requiring two separate surgeries. As of January 23, 2026, Plaintiff was ordered to remain non-weight-bearing on his operative leg and was assigned bed rest pending re-evaluation, reflecting the ongoing and debilitating nature of his injuries.

48. Plaintiff's injuries are permanent and will require future medical care, including the prospect of additional surgery, as well as physical therapy and rehabilitation. The injuries have

caused, and will continue to cause, Plaintiff pain, disability, and a loss of earnings and an impairment of his future earning capacity.

## **CLAIMS UNDER 42 U.S.C. § 1983**

### **FIRST CAUSE OF ACTION**
### **(Unlawful Seizure and Deprivation of Liberty Under 42 U.S.C. § 1983)**

49. Plaintiff repeats, reiterates, and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

50. The Doe Defendants, while acting under color of state law and in concert with one another, caused Plaintiff to be seized, unlawfully searched, falsely arrested, and falsely imprisoned without reasonable suspicion and/or probable cause, in violation of Plaintiff's right to be free from an unreasonable seizure under the Fourth Amendment to the Constitution of the United States and his right to be free from a deprivation of liberty without due process under the Fourteenth Amendment to the Constitution of the United States.

51. As a result of the aforementioned conduct of defendants, Plaintiff sustained injuries, including but not limited to physical, emotional, and psychological injuries.

### **SECOND CAUSE OF ACTION**
### **(Excessive Force Under 42 U.S.C. § 1983)**

52. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

53. The force employed by defendants in deploying a taser against Plaintiff while he was at an elevated height on a highway overpass was objectively unreasonable and excessive under the circumstances, in violation of Plaintiff's rights under the Fourth and Fourteenth Amendments to the Constitution of the United States.

54. Deploying a taser against a person at such a height, where the foreseeable effect of the weapon is to cause the person to lose all muscular control and fall, constitutes the use of deadly

or potentially lethal force, because it carries a substantial and obvious risk of causing death or serious physical injury.

55. At the time this force was used, Plaintiff was unarmed, had committed no crime, posed no immediate threat of death or serious physical harm to the officers or to any other person, and was, at most, fleeing on foot. The use of deadly or potentially lethal force against a fleeing person who poses no such threat is objectively unreasonable and constitutionally prohibited.

56. As a result of the foregoing, Plaintiff sustained, inter alia, severe and permanent physical injuries, severe pain and suffering, emotional distress, and the deprivation of his constitutional rights.

57. The Doe Defendants acted intentionally, willfully, maliciously, and with reckless and callous indifference to Plaintiff's federally protected rights, entitling Plaintiff to an award of punitive damages against them.

## THIRD CAUSE OF ACTION
## (Failure to Intervene Under 42 U.S.C. § 1983)

58. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

59. The Doe Defendants had an affirmative duty to intervene to protect the constitutional rights of Plaintiff from being violated by other police officers in their presence.

60. The Doe Defendants violated Plaintiff's constitutional rights in the presence of their police colleagues.

61. The Doe Defendants had reason to know Plaintiff's constitutional rights were being violated.

62. The Doe Defendants had a realistic opportunity to intervene to prevent the harm from occurring to Plaintiff but failed to do so.

63. Notwithstanding this opportunity, the Doe Defendants failed to intervene to prevent the violations of Plaintiff's constitutional rights.

64. As a result of the foregoing, Plaintiff sustained, inter alia, severe pain and suffering, bodily injuries, emotional distress, and deprivation of his constitutional rights.

## FOURTH CAUSE OF ACTION
## (Deliberate Indifference to Serious Medical Needs Under 42 U.S.C. § 1983)

65. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

66. After defendants caused Plaintiff to fall approximately forty to fifty feet from the overpass to the highway below, Plaintiff was in defendants' custody and had an obvious and serious need for emergency medical care, including the serious risk of spinal and other traumatic injuries associated with a fall from such a height.

67. Defendants knew, or in the exercise of reasonable care should have known, of Plaintiff's serious medical needs and of the substantial risk of harm those needs presented.

68. Notwithstanding that knowledge, defendants failed to summon emergency medical services to the scene. Instead, they handcuffed the gravely injured Plaintiff and transported him themselves, without the spinal immobilization or other precautions that proper emergency medical care for a fall victim requires, thereby disregarding and exacerbating the risk of further injury to Plaintiff.

69. Defendants' conduct was objectively unreasonable and constituted deliberate indifference to Plaintiff's serious medical needs, in violation of his rights under the Fourth and Fourteenth Amendments to the Constitution of the United States.

70. As a result of the foregoing, Plaintiff sustained, inter alia, additional and aggravated physical injuries, severe pain and suffering, emotional distress, and the deprivation of his constitutional rights.

71. The Doe Defendants acted with reckless and callous indifference to Plaintiff's federally protected rights, entitling Plaintiff to an award of punitive damages against them.

**FIFTH CAUSE OF ACTION**
**(False Arrest Under 42 U.S.C. § 1983)**

72. Plaintiff repeats, reiterates and realleges each and every allegation in the aforementioned paragraphs with the same force and effect as if fully set forth herein.

73. All of the aforementioned acts of defendants, their agents, servants and employees, were carried out under the color of state law.

74. All of the aforementioned acts deprived Plaintiff of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

75. Defendants unlawfully seized and detained Plaintiff, depriving him of his liberty without any lawful justification for doing so.

76. The acts complained of were carried out by the Doe Defendants in their capacity as police officers, with all the actual and/or apparent authority attendant thereto.

77. The Doe Defendants acted intentionally, willfully, maliciously, and with reckless and callous indifference to Plaintiff's federally protected rights, entitling Plaintiff to an award of punitive damages against them.

**SIXTH CAUSE OF ACTION**
**(Denial of Right to Fair Trial / Due Process Based on Fabricated Evidence Under 42 U.S.C. § 1983)**

78. Plaintiff repeats, reiterates, and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

79. Defendants, individually and collectively, manufactured and/or withheld false evidence and forwarded this false evidence to prosecutors in the Queens County District Attorney's Office.

80. Defendants filled out false and misleading police reports, and signed false and misleading criminal court affidavits, and forwarded them to prosecutors in the Queens County District Attorney's Office.

81. Having tased an unarmed man off a highway overpass and very nearly killed him, the Doe Defendants set about burying their own misconduct beneath a pile of false charges. They fabricated a false account of the encounter, falsely casting Plaintiff as a violent aggressor and a criminal, and caused him to be charged with five separate offenses he did not commit: assault in the third degree, criminal obstruction of breathing, petit larceny, criminal possession of stolen property in the fifth degree, and harassment in the second degree.

82. The Doe Defendants manufactured and forwarded this false evidence for a single purpose: to fabricate probable cause for an arrest they had no lawful basis to make, and to justify and cover up their unlawful, near-lethal use of force. That every one of the five charges was dismissed and sealed in its entirety lays bare that there was never any legitimate basis for the prosecution.

83. In creating false evidence against Plaintiff, and in providing and/or withholding information with respect thereto, Defendants violated Plaintiff's constitutional right to due process and a fair trial under the Due Process Clause of the Fifth Amendment to the Constitution of the

United States, and his right to be free from a deprivation of liberty under the Fourteenth Amendment to the Constitution of the United States.

84. As a result of the foregoing, Plaintiff sustained, inter alia, loss of the right to due process and a fair trial, loss of liberty, emotional distress, embarrassment and humiliation, and deprivation of his constitutional rights.

85. The Doe Defendants acted intentionally, willfully, maliciously, and with reckless and callous indifference to Plaintiff's federally protected rights, entitling Plaintiff to an award of punitive damages against them.

**SEVENTH CAUSE OF ACTION**
**(Malicious Prosecution Under 42 U.S.C. § 1983)**

86. Plaintiff repeats, reiterates, and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

87. The acts and conduct of the defendants constitute malicious prosecution in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States, actionable under 42 U.S.C. § 1983.

88. Defendants commenced and continued criminal proceedings against Plaintiff, charging him with five offenses he did not commit.

89. There was actual malice and an absence of probable cause for the criminal proceeding against Plaintiff and for each of the charges for which he was prosecuted.

90. Defendants did not initiate and continue this prosecution to bring a wrongdoer to justice. They did it to manufacture cover for themselves: to recast the man they had tased off an overpass as a criminal, and to insulate themselves from accountability for nearly killing him.

91. The criminal proceedings terminated in Plaintiff's favor when all charges against him were dismissed and sealed in their entirety on April 17, 2026.

92. As a result of the malicious prosecution, Plaintiff was subjected to a deprivation of liberty consistent with the concept of a seizure, including his arrest and his continued detention in police custody throughout his hospitalization.

93. As a result of the foregoing, Plaintiff sustained, inter alia, loss of liberty, emotional distress, embarrassment and humiliation, and deprivation of his constitutional rights.

94. The Doe Defendants acted intentionally, willfully, maliciously, and with reckless and callous indifference to Plaintiff's federally protected rights, entitling Plaintiff to an award of punitive damages against them.

**EIGHTH CAUSE OF ACTION**
**(Municipal Liability Under 42 U.S.C. § 1983)**

95. Plaintiff repeats, reiterates and realleges each and every allegation contained in the above numbered paragraphs with the same force and effect as if fully set forth herein.

96. Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure, or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

97. The New York City Police Department has long maintained mandatory police procedures and training governing the use of conducted electrical weapons (commonly known as tasers).

98. Those procedures expressly and absolutely prohibit the deployment of a taser against any person who is located at an elevated height; they do not merely discourage or counsel against it. The prohibition is mandatory, not discretionary.

99. The City of New York has had actual and constructive knowledge, for nearly two decades, of the lethal and foreseeable danger of deploying a conducted electrical weapon against a person on an elevated surface.

100. In or about September 2008, an NYPD Emergency Service Unit lieutenant ordered the deployment of a conducted electrical weapon against a man positioned on an elevated ledge in Brooklyn. The electrical shock immobilized the man, who then fell to his death.

101. Following that incident, the Department publicly acknowledged that the deployment appeared to violate its mandatory procedures prohibiting the use of such weapons against a person located at an elevated height, and the Police Commissioner ordered additional training.

102. Notwithstanding this longstanding knowledge and its own written prohibition, the City of New York failed to adequately train, supervise, and discipline its officers concerning the use of conducted electrical weapons on elevated surfaces, with deliberate indifference to the obvious and known risk of death or serious physical injury to persons such as Plaintiff.

103. The risk that an officer would deploy a taser against a person at an elevated height, and thereby cause that person to fall and suffer death or serious injury, is so obvious, and the consequences so predictable, that the City's failure to adequately train and supervise its officers to prevent it constitutes deliberate indifference to the rights of persons such as Plaintiff, even apart from any prior pattern of similar violations.

104. The City's deliberate indifference is further demonstrated by a documented pattern of taser misuse by NYPD officers. The City's own oversight agency, the Civilian Complaint Review Board, examined years of taser-related complaints in reports issued in 2016 and 2019, found repeated instances of improper taser use by NYPD officers, and concluded that the Department needed to clarify its taser policies for officers and provide additional training. The City failed to take adequate corrective action in response.

105. The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department included, but were not limited to, the following:

(a) Failing to adequately train its police officers, including the Doe Defendants, that a conducted electrical weapon must not be deployed against a person who is on an elevated surface, or in any position where the effects of the weapon could cause the person to fall and suffer substantial injury or death;

(b) Failing to adequately train its police officers regarding the foreseeable risk that the neuromuscular incapacitation caused by a conducted electrical weapon will cause a person on an elevated surface to lose muscular control and fall;

(c) Permitting and condoning the deployment of conducted electrical weapons against persons who are merely fleeing on foot and who present no immediate threat of physical injury to officers or others, in circumstances prohibited by the Department's own use-of-force policies;

(d) Failing to supervise and discipline police officers who deploy conducted electrical weapons in prohibited circumstances, including against persons positioned on elevated surfaces;

(e) Failing to require, train, and supervise officers regarding the authorization, involvement, and oversight of a ranking supervisor in connection with the use of conducted electrical weapons;

(f) Failing to train officers to summon and provide appropriate emergency medical care to persons injured by the use of force;

(g) Displaying a deliberate indifference to the health, safety and welfare of persons subjected to the deployment of conducted electrical weapons in prohibited circumstances, and who sustain serious injuries and/or death as a result.

106. The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department were the moving force behind the constitutional violations suffered by Plaintiff as alleged herein.

107. Additionally, the NYPD's deliberate indifference to the proper training, supervising and/or disciplining of its officers, including the Doe Defendants, constituted explicit and/or tacit approval of their unlawful and unconstitutional conduct.

108. As a result of the foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department, Plaintiff was subjected to the deployment of a conducted electrical weapon while at an elevated height on the overpass, causing him to fall, and he suffered grievous and permanent injuries as a result.

109. The acts complained of were a direct and proximate result of the usages, practices, procedures and rules of the City of New York and the New York City Police Department, which constituted deliberate indifference to the safety, well-being and constitutional rights of Plaintiff.

110. The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department were the direct and proximate cause of the constitutional violations suffered by Plaintiff as alleged herein.

## CLAIMS UNDER NEW YORK CITY ADMINISTRATIVE CODE § 8-802 (LOCAL LAW NO. 48 OF 2021)

### NINTH CAUSE OF ACTION
### (Individual Defendant Officer's Violation of Plaintiff's AC § 8-802 Rights)

111. Plaintiff repeats, reiterates, and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

112. The acts of the Doe Defendants constituted conduct under color of any law, ordinance, rule, regulation, custom, or usage.

113. The acts of the Doe Defendants caused Plaintiff to be deprived of his rights under 2021 N.Y.C. Local Law No. 48, N.Y.C. Admin. Code § 8-802, to wit: to be secure in his person, house, papers, and effects against unreasonable searches and seizures, and to be secure against the use of excessive force regardless of whether such force is used in connection with a search or seizure.

114. The Doe Defendants, while in uniform, unlawfully pursued Plaintiff, deployed a taser against him at an elevated overpass, and caused his seizure, search, arrest, and detention without legal justification.

115. By reason of the acts and omissions of defendants described above, Plaintiff has endured mental and emotional injuries and was otherwise damaged and injured.

**TENTH CAUSE OF ACTION**
**(Individual Defendant Officer's Failure to Intervene in Violation of Plaintiff's AC § 8-802 Rights)**

116. Plaintiff repeats, reiterates, and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

117. The acts of the Doe Defendants constituted conduct under color of any law, ordinance, rule, regulation, custom, or usage.

118. The Doe Defendants had a duty to protect Plaintiff from violations of his rights under 2021 N.Y.C. Local Law No. 48, N.Y.C. Admin. Code § 8-802, to wit: to be secure in his person, house, papers, and effects against unreasonable searches and seizures, and to be secure against the use of excessive force regardless of whether such force is used in connection with a search or seizure.

119. These defendants who did not physically touch Plaintiff, but were present when other officers violated Plaintiff's AC § 8-802 rights against unreasonable search and seizure and

excessive force, had an affirmative duty to intervene on behalf of Plaintiff, whose rights were being violated in their presence by other officers.

120. Defendants failed to intervene to prevent the unlawful conduct described herein, thereby failing in their duty to intervene to protect Plaintiff from violation of his rights.

121. By reason of the acts and omissions of defendants described above, Plaintiff has endured mental and emotional injuries and was otherwise damaged and injured.

**ELEVENTH CAUSE OF ACTION**
**(City-Employer's Liability for Defendant Officer's Violation of Plaintiff's AC § 8-802 Rights)**

122. Plaintiff repeats, reiterates, and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

123. The Doe Defendants are "covered individuals," as defined in 2021 N.Y.C. Local Law No. 48, N.Y.C. Admin. Code § 8-801, in that they are employees of the Police Department or persons appointed by the Police Commissioner as a Special Patrolman.

124. The City of New York, as the employer of the Doe Defendants, is liable to Plaintiff for the wrongdoing of the Doe Defendants.

125. The acts of the Doe Defendants constituted conduct under color of any law, ordinance, rule, regulation, custom or usage.

126. The acts of the Doe Defendants caused Plaintiff to be deprived of his rights under 2021 N.Y.C. Local Law No. 48, N.Y.C. Admin. Code § 8-802, to wit: to be secure in his person, house, papers, and effects against unreasonable searches and seizures, and to be secure against the use of excessive force regardless of whether such force is used in connection with a search or seizure.

127. The Doe Defendants, while in uniform, unlawfully pursued, tased, seized, searched, and arrested Plaintiff, before causing his continued detention throughout his hospitalization and subsequent criminal proceedings.

128. By reason of the acts and omissions of defendants described above, Plaintiff has endured mental and emotional injuries and was otherwise damaged and injured.

**TWELFTH CAUSE OF ACTION**
**(City-Employer's Liability for Defendant Officer's Failure to Intervene in Violation of Plaintiff's AC § 8-802 Rights)**

129. Plaintiff repeats, reiterates, and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

130. The Doe Defendants are "covered individuals," as defined in 2021 N.Y.C. Local Law No. 48, N.Y.C. Admin. Code § 8-801, in that they are employees of the Police Department or persons appointed by the Police Commissioner as a Special Patrolman.

131. The City of New York, as the employer of the Doe Defendants, is liable to Plaintiff for the wrongdoing of the Doe Defendants.

132. The acts of the Doe Defendants constituted conduct under color of any law, ordinance, rule, regulation, custom or usage.

133. The Doe Defendants had a duty to protect Plaintiff from violations of his rights under 2021 N.Y.C. Local Law No. 48, N.Y.C. Admin. Code § 8-802, to wit: to be secure in his person, house, papers, and effects against unreasonable searches and seizures, and to be secure against the use of excessive force regardless of whether such force is used in connection with a search or seizure.

134. The defendants that did not physically touch Plaintiff but were present when other officers violated Plaintiff's AC § 8-802 rights against unreasonable search and seizure and

excessive force had an affirmative duty to intervene on behalf of Plaintiff, whose rights were being violated in their presence by other officers.

135. Defendants failed to intervene to prevent the unlawful conduct described herein, thereby failing in their duty to intervene to protect Plaintiff from violation of his rights.

136. By reason of the acts and omissions of defendants described above, Plaintiff has endured mental and emotional injuries and was otherwise damaged and injured.

**JURY DEMAND**

137. Plaintiff hereby demands a trial by jury of all issues properly triable thereby.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff MALCOLM MANSFIELD demands judgment against the defendants on each cause of action in amounts to be determined upon the trial of this action, including: compensatory damages for his physical injuries, pain and suffering, emotional distress, past and future medical expenses, and lost earnings and impairment of earning capacity; punitive damages against the Doe Defendants; reasonable attorneys' fees, costs and disbursements pursuant to 42 U.S.C. § 1988 and 2021 N.Y.C. Local Law No. 48, N.Y.C. Admin. Code §§ 8-801 et seq.; pre-judgment and post-judgment interest; and any further relief that the Court deems just and proper.

Dated: New York, New York
June 10, 2026

**JON L. NORINSBERG, ESQ., PLLC**

By: ______________________________

Jon L. Norinsberg, Esq.
*Attorneys for Plaintiff*
825 Third Avenue, Suite 2100
New York, New York 10022
Tel.: (212) 791-5396
jon@norinsberglaw.com